BALLIN v. VIETOR et al.

(Supreme Court, Appellate Division, First Department.  April 7, 1899.)

TRIAL—ADMISSION OF EVIDENCE—MOTION TO STRIKE OUT.

Admission of evidence (material on the issue of intent of assignors in making assignment, which was then being tried) that, immediately preceding the assignment, the assignors obtained an extension of credit by false statements as to financial condition, is not ground for reversal, though the only issue finally submitted was the validity of the claim of the mother of one of the assignors; a motion to strike out the evidence being, in such case, the proper remedy.

Appeal from trial term, New York county.

Action by Aaron Ballin, assignee for benefit of creditors of James W. Gough and another, against Carl Vietor and others. From a judgment on a verdict for defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Herbert H. Walker, for appellant.

Alexander Blumenstiel, for respondents.

McLAUGHLIN, J.  On the 20th of November, 1890, the firm of Gough & Osborn made a general assignment for the benefit of creditors to the plaintiff, who took possession of the assigned estate. The defendants thereafter caused a sale, under an execution issued upon a judgment obtained by them against the assignors, to be made of certain property that passed under the assignment. The defendants gave the usual bond to indemnify the sheriff against any damage that he might sustain by reason of the levy and sale, and this action was brought against them, as sureties upon the bond, to recover the value of the property sold. The defendants, in their answer, alleged that they were justified in levying upon and selling the property, for the reason that the assignment to the plaintiff was void, as to them, because made with intent to hinder, delay, and defraud creditors. The defendants had a verdict, and from the judgment entered thereon, dismissing the complaint, the plaintiff appealed.

Upon the trial the defendants sought to establish the invalidity of the assignment by showing that the assignors, immediately preceding the making of the assignment, by means of false and fraudulent representations as to their assets and liabilities, obtained from the defendants an extension of time in which to pay an indebtedness then due to them, and, after having obtained such extension, they made false entries in their books, and that the claim of Marion Osborn of $500, for which she was preferred in the assignment, was fictitious. As to the extension of credit, it appeared that on the 28th of October, 1890, the firm of Gough & Osborn was indebted to the defendants in a considerable sum, which was then due, and that on that day John Osborn, one of the members of the firm, called at defendants' place of business, and induced them to accept notes in settlement of the claim, by means of a written statement as to the financial condition of his firm, which statement was untrue, both as to assets and liabilities; that the statement provided that it was made

for the purpose of inducing the defendants to accept notes in settlement of the amount then due, and that, in case of any act of insolvency on the part of Gough & Osborn, such notes should at once become payable; that the defendants, ascertaining that the assignment had been made, brought action upon the notes, recovered judgment, issued execution thereon, and thereafter sold certain of the assigned property. Other facts were made to appear, which, taken in connection with the written statement, tended to show the intent of the assignors in making the assignment. As to the entries in the books, and the claim of Mrs. Osborn, it appeared that, the day after the written statement referred to was given to the defendants, an entry was made in one of the books of the assignors by John Osborn, one of the members of the firm of Gough & Osborn, and a son of Marion Osborn, by which she was credited with $500, "money borrowed March, 1887"; and that she was such creditor did not appear in any other way from the books of the firm. But it did appear from other entries in the books that in March, 1887, John Osborn was credited with $500, and that he thereafter paid interest on that sum to Marion Osborn, by checks of the firm, which were in each case charged to his personal account; and other evidence was also given tending to show that the claim of Mrs. Osborn was fictitious. At the close of the trial the learned justice submitted but one question on the validity of the assignment to the jury, and that was whether Mrs. Osborn was, at the time the assignment was made, a creditor of the firm of Gough & Osborn, with instructions that, if she were not, their verdict must be for the defendant, but, if she were, then their verdict must be for the plaintiff. It cannot seriously be contended but that the entries in the assignors' books, taken in connection with the other evidence bearing on the validity of Mrs. Osborn's claim, made that a question of fact, to be, and which was properly, submitted to the jury. The jury found that she was not at the time a creditor, and we are entirely satisfied with their finding.

But it is urged by the appellant that errors were committed on the trial which necessitate a reversal of the judgment. The alleged errors consist principally of the reception in evidence, against plaintiff's objection and exception, of the written statement referred to, and of the refusal of the learned trial court to charge as requested by plaintiff. This written statement, we think, was properly received in evidence at the time it was offered. The issue which was being tried was whether the assignment was made with intent to hinder, delay, and defraud creditors, and, as bearing on that issue, it was competent to show statements made, immediately preceding the assignment, by the assignors, or either of them, to creditors, and that on the day following false entries were made in the assignors' books. By the use of this false statement an extension of credit was obtained, and on the day following, by a single entry in one book, Mrs. Osborn, for the first time, was made to appear as a creditor of the insolvent firm. This evidence was material, as bearing on the intent of the assignors. But if it could be said that the statement was immaterial, as bearing upon the one issue which was finally submitted to the jury, it must be remembered that the trial court could not have de-

termined this when the paper was received in evidence; and it does not appear that the plaintiff's attorney at any time thereafter asked to have the paper stricken out, or to have the jury instructed to disregard it.

As to the refusals to charge as requested by the plaintiff's attorney, we do not think it necessary to consider them separately or at length. An examination of the charge made by the learned trial justice shows that many of the requests which were refused were covered by the charge, and the others were entirely immaterial on the issue submitted to the jury. The only issue, as we have already seen, as to the validity of the assignment, which went to the jury, was whether, when the assignment was made, the assignors owed Mrs. Osborn the $500 for which she was preferred, and this was fairly submitted to the jury. The evidence sustains their finding, and the judgment should be affirmed, with costs to the respondents. All concur.